# C. P. Dutton

*v.*

## The City of Aurora *et al.*

*Filed at Ottawa May 15, 1885.*

1. WATER WORKS *in cities and villages—powers in respect to their construction, etc.—act of 1873, in its application to cities acting under special charters.* The act entitled "An act authorizing cities, incorporated towns and villages to construct and maintain water works," approved and in force April 15, 1873, applies to all cities, whether incorporated under special charters or under the general law, except in cities, towns or villages in which water works were at its passage managed and controlled by a board of public works.

2. The first section of that act, in giving cities, towns, etc., power to provide for a supply of water by the erection, construction and maintenance of a system of water works, leaves the municipal authorities unrestricted as to the character and cost or the means whereby the supply of water shall be provided, and authorizes them to borrow money to the extent needed to make the contemplated improvement, and to this extent operates as a repeal of all limitations in their charters on their power of contracting indebtedness and borrowing money on bonds to be issued by them.

3. IMPLIED MUNICIPAL POWERS—*in aid of express powers.* An express grant of power to a municipal corporation, or other person, to do a given thing, carries with it, by implication, authority to use the necessary means by which it can be done. So the power to borrow money for a proposed public improvement by an incorporated city, gives, as a necessary incident, the power to issue its bonds for the money.

4. MUNICIPAL INDEBTEDNESS—*limitations as to power of contracting.* A limitation in a special city charter as to the rate of taxation is binding only upon the municipal authorities, and not upon the General Assembly; but section 12, of article 9, of the constitution, which prohibits the incurring of corporate debts exceeding five per cent on the value of the taxable property of the municipality, is equally binding on the legislature.

5. REPEAL OF STATUTES—*by implication.* Where the provisions of a former and a later statute are inconsistent and repugnant in respect to the same subject matter, the later statute is a repeal of the former to the extent of the inconsistency or repugnancy.

6. So where a city, by its special charter, is limited in borrowing money to a sum not exceeding $5000 in any one year, for which it may issue its bonds, but a subsequent general law gives all incorporated cities, etc., power to construct water works, without limit as to the cost, and to borrow money for such purpose on its bonds, the general law will operate to repeal the pro-

visions in the charter only in respect to indebtedness and borrowing of money for constructing and maintaining a system of water works, leaving the limitations in the charter in force as to the contracting of indebtedness for other purposes.

7. CONSTRUCTION OF STATUTES—*the naming of particular things as excluding all others.* The introduction of an exception as to the operation of a general statute is necessarily exclusive of all other independent extrinsic exceptions.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Kane county; the Hon. CHARLES KELLUM, Judge, presiding.

Mr. R. N. BOTSFORD, for the appellant:

The city, by its charter, is authorized to borrow money not exceeding $5000 in any one year. But it is claimed that the act of April 15, 1873, (Gen. Law, chap. 24, sec. 230,) enlarged the powers of the city. Corporate powers are strictly construed, and all doubts are resolved against them. 1 Dillon on Mun. Corp. sec. 55; *Mintern* v. *Larned,* 23 How. 435; *Schott* v. *People,* 89 Ill. 195; *Mix* v. *Ross,* 57 id. 121; *Pitzman* v. *Village of Freeburg,* 92 id. 111; *Zanone* v. *Mound City,* 103 id. 552; *Webster* v. *People,* 98 id. 343.

It can not be claimed that the limitation in the charter is repealed by implication. There is nothing in the general act indicating any intention to interfere with the provisions of special charters. *People* v. *Cooper,* 83 Ill. 595; *Edwards* v. *People,* 88 id. 340; *Town of Sparland* v. *Barnes,* 98 id. 595.

The policy of the legislature, since the new constitution, has been to change existing special charters only with the consent of the people affected thereby. *People* v. *Cooper,* 83 Ill. 590.

If the people want the power to make the proposed improvement, the remedy is by adopting the general Incorporation act. *Binkert* v. *Jansen,* 94 Ill. 283.

The power to create a municipal liability can not be deduced from considerations of inconvenience. *Hill* v. *Chicago,* 60 Ill. 91.

The presumption would be that the general law was intended to apply to such corporations, or cities organized under special charters, as were endowed by the provisions of such charters with the legal capacity to embrace and accept its benefits. *Pitzman* v. *Village of Freeburg*, 92 Ill. 111.

Mr. Charles Wheaton, and Mr. Charles L. Allen, for the appellees:

If it was the intention of the legislature, in passing the act of 1873, to enlarge appellees' powers to borrow money for constructing water works, then that intention is untrammeled. The restricting clause in the city charter restricts the city only, and so far as restricting the legislature's future acts is concerned, has no more effect than if it had never been passed. *United States* v. *New Orleans*, 98 U. S. 397.

No question of repeal is involved. A repealed law, except as to transactions passed and closed, must be considered as if it had never existed. *Canal Co.* v. *City of Chicago*, 14 Ill. 334.

Though the act of 1873 does enlarge the power of the city to borrow money for water works, yet for all other purposes the limiting clause in the charter is in force. If any force is given to the second section of the act, conferring power to borrow money, it must apply directly to cities under special charters, who do not have that power, and the court must construe this so as to give effect to all its parts. *Thompson* v. *Bulson*, 78 Ill. 277; *Davis* v. *Haydon*, 3 Scam. 35; *Perry County* v. *Jefferson County*, 94 Ill. 214.

To such cities, section 2 of the Water Works act is surplusage, and only when applied to cities under special charters does it become effective. Hurd's Stat. 1883, p. 238, secs. 169, 171.

Increase or restriction of the revenue power of a city organized under special charter can, since 1870, only be effected by a general law. *Spring* v. *Olney*, 78 Ill. 101; *People* v. *Cooper*, 83 id. 585.

Where express power to perform a public work is conferred on a city, all authorities are generally settled that reasonable power to carry on the same is implied. *Mills* v. *Gleason,* 11 Wis. 510; *Williamsport* v. *Commonwealth,* 84 Pa. St. 487; *United States* v. *New Orleans,* 98 U. S. 381. *A fortiori,* where express power to borrow money is given, it should be held to mean, to a reasonable amount, equal to the work to be done.

Legislation on the same subject matter by the same legislature shows an intent of the legislature to enlarge the city's power; and it is the duty and right of the court to seek the intention of an act, when not perfectly clear, in other acts on the same subject matter, or in affinity with it. *Stribling* v. *Prettyman,* 57 Ill. 371; 1 Blackstone's Com. *60, note.

The act of March 17, 1874, entitled "An act to provide for laying water supply-pipes, by bonds and special assessment, payable in installments," which refers to the same subject matter, and was passed by the same assembly that passed the act of April 15, 1873, provides for the issuance of bonds upon the estimated cost of laying water supply-pipes, not to exceed the statutory, charter or constitutional limitation of indebtedness of the city. When the legislature authorized the city of Aurora, in common with other cities and towns, to construct and maintain a system of water works, such authority, by implication, carried with it the power to adopt the ordinary means employed by such bodies to raise funds for that purpose. *United States* v. *New Orleans,* 98 U. S. 381; *Lowell* v. *Boston,* 111 Mass. 460; *Commonwealth* v. *Commissioners of Alleghany Co.* 37 Pa. 277; *Hasbrouck* v. *Milwaukee,* 25 Wis. 122; *Hitchcock* v. *Galveston,* 96 U. S. 341; *Williamsport* v. *Commonwealth,* 84 Pa. St. 487; *Le Cauteuex* v. *Buffalo,* 33 N. Y. 333.

As to the powers of municipal corporations to borrow money and issue bonds to enable them to carry out the powers conferred upon them by the legislature, see Dillon on Mun. Corp.

(3d ed.) secs. 117, 127, 129 ; *Meyer* v. *Muscatine*, 1 Wall. 384 ; *Mitchell* v. *Bruling*, 4 id. 270 ; *Rogers* v. *Burlington*, 3 id. 654 ; *Commonwealth* v. *Pittsburg*, 84 Pa. St. 496.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court :

This was a bill in equity, by a tax-payer of the city of Aurora, to enjoin the corporate authorities of that city from issuing its bonds to the amount of $100,000, for the purpose of erecting and maintaining a system of water works.    The grounds upon which the injunction is prayed are, first, that the city is prohibited from borrowing money exceeding $5000 in any one year ; and second, that the ordinance authorizing the issue of the bonds provides that an annual tax of three mills on the dollar shall be levied for the payment of principal and interest on the borrowed money, while section 1 of chapter 2 of an amendment to the original charter of the city of Aurora, approved February 16, 1861, provides, "the common council shall have the power to levy and collect taxes upon the real and personal property within the limits of said city, not exceeding one and one-half per cent upon the assessed value thereof, to pay the general contingent and other expenses of said city ;" and if an additional tax of three mills on the dollar should be levied with the tax levy of 1883, it would have resulted in a levy of more than one and one-half per cent upon the assessed value of the real and personal property for that year.    It was stipulated between the parties, on the hearing, that an additional tax of three mills on the dollar, in 1883, would have made a levy exceeding one and one-half per cent upon the assessed value of the real and personal property for that year.    The court below, on final hearing, decreed that the bill be dismissed.

Subdivision 37, of section 4, of chapter 4, of the special charter under which the city of Aurora is incorporated, provides that the city authorities shall have power "to borrow

money, on the credit of the city, not exceeding $5000 in any one year, and pledge the revenues of the city for its payment, and issue bonds therefor." And if this is the only authority for issuing the bonds, it is very clear the ordinance is illegal, because in excess of any authority conferred upon the city council, and the court erred in dismissing the bill. This question turns upon whether an act entitled "An act authorizing cities, incorporated towns and villages to construct and maintain water works, approved and in force April 15, 1873," applies to cities incorporated under special charters, or only to cities incorporated under the general law. We think it applies to cities incorporated under special charters, as well as to those incorporated under the general law, for these reasons:

*First*—The language of the act is as broad and comprehensive in its terms as it is possible to make it. It is, that "*all cities*, incorporated towns and villages *in this State*, be and are hereby authorized," etc.

*Second*—If the act shall be held to apply only to cities, etc., incorporated under the general law, the second section is entirely superfluous, (which is never to be assumed,) since precisely the same powers are conferred upon those cities by section 1, article 10, of the general law in relation to "Cities, Villages and Towns." Rev. Stat. 1874, p. 240.

*Third*—The seventh section of the act is in these words: "The provisions of this act shall not apply to cities, towns or villages, in which water works are now managed or controlled by a board of public works." If it had been intended to limit it to cities incorporated under the general law, here would have been the proper place to state it. By this exception the act shall not apply to cities, etc., in which water works are now managed or controlled by a board of public works, necessarily, by the language employed, whether such cities are incorporated under special charters or under the general law, and, by implication, declaring that it does apply to all *other*

cities, whether incorporated under special charters or under the general law. "The introduction of the exemption is necessarily exclusive of all other independent, extrinsic exceptions." Potter's Dwarris on Statutes, 221.

*Fourth*—The title to the act indicates that it is a general law, "applicable to *all* cities," etc., in the State, and does not profess that it is an amendment or supplement to the general law.

The first section of this act empowers "all cities   *   *   * in this State   *   *   * to provide for a supply of water for the purposes of fire protection and for the use of the inhabitants of such cities,   *   *   * by the erection, construction and maintaining of a system of water works." The second section provides that "such cities, incorporated towns and villages may borrow money and levy and collect a general tax, in the same manner as other municipal taxes may be levied and collected, for the erection, construction and maintaining of such water works, and appropriate money for the same." The language leaves the municipal authorities unrestricted as to the character and cost of the means whereby the supply of water shall be provided, and authorizes them to borrow money, etc., for that purpose,—*i. e.*, to the extent that it shall be necessary in order to make the contemplated improvement. The propositions are so fundamental and familiar that it is not deemed necessary to cite authorities to prove that where authority is given to do a thing, it carries with it, by implication, authority to use the necessary means by which it can be done; and that where the provisions of a former and a later statute are inconsistent and repugnant in respect of the same subject matter, the latter is a repeal of the former to the extent of the inconsistency or repugnancy. There was no necessity for a repealing clause in this general law, because provisions in special charters otherwise limiting the power to borrow money, levy taxes, etc., were not intended to be affected, but in all other instances of the contracting of

indebtedness it was intended they should remain in force, just as they then were. Having the power to contract the indebtedness, and to issue the bonds to an amount deemed necessary to produce the desired supply of water, the limitation in the special charter does not affect it. Having power to borrow money, the power to issue bonds therefor results as a necessary incident, and the circuit court properly refused to enjoin the issuing of the bonds.

The ordinance providing for the levying and collecting of an annual tax for the payment of these bonds is not shown to violate the restriction in section 12, of article 9, of the constitution, which prohibits the incurring of debts beyond five per centum on the value of the taxable property of the municipality, and in other respects it strictly conforms to the requirements of that section. The limitation in the special city charter as to the rate of taxation, is a limitation upon the municipal authority, and not upon the General Assembly, as is the constitutional limitation referred to; and so when the General Assembly authorized the incurring of a debt, to meet the annual interest upon which would require a greater levy than the amount specified in the special charter as the limit, the law authorizing the incurring of the debt is to be regarded as, to that extent, a repeal of the limitation in the special city charter. We regard, moreover, the act entitled "An act in relation to the levy and collection of taxes for sewerage and water works in cities of this State that may have established a system of sewerage and water works for such city, and to repeal an act therein named, and to authorize the cities, villages and incorporated towns of this State to levy and collect taxes to pay for water and light," approved and in force June 21, 1883, (Laws of 1883, page 68,) as conclusive as against any doubt that otherwise might have remained in this respect.

The judgment is affirmed.

*Judgment affirmed.*